CARL A. HOFFER & others[1] *vs.* COMMISSIONER OF CORRECTION.

Suffolk. December 5, 1985. — March 20, 1986.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, & NOLAN, JJ.

*Imprisonment. Public Officer. Practice, Civil,* Failure to make objection, Interlocutory appeal. *Constitutional Law,* Separation of powers, Judiciary.

An order by a single justice of this court enjoining the commissioner and other employees of the Department of Correction from withdrawing, without court approval, the right of staff attorneys and a paralegal of Massachusetts Correctional Legal Services to meet with inmates confined in a departmental segregation unit did not contravene the principle of separation of powers and was an appropriate response to the department's violation of the single justice's prior order intended to protect the inmates' right to meet in reasonable circumstances with counsel. [155-156]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on February 25, 1985.

The case was heard by *Liacos,* J.

*Freda K. Fishman (John W. Bishop, Jr.,* Special Assistant Attorney General, with her) for the Commissioner of Correction.

*Gerard J. Clark* for the plaintiffs.

WILKINS, J. The Commissioner of Correction (commissioner) challenges portions of injunctions issued by a single justice of this court as impermissible judicial interference with his properly exercised executive authority. Specifically, the commissioner asks us to revoke an order that bars him and other employees of the Department of Correction (department) from withdrawing, without prior court approval, the right of staff attorneys and a paralegal of Massachusetts Correctional

---

[1] Arthur Jones, Kenneth Renrick, Steven Riddle, Anthony Stafford, and James Stone.

Legal Services (MCLS) to meet with inmates confined in a departmental segregation unit (DSU) at the Massachusetts Correctional Institution at Cedar Junction and elsewhere.[2]

In February, 1985, each Justice of this court received a copy of a handwritten, four-page letter entitled "An Open Letter from Ten Block" and signed "The Ten Block Inmates." The letter wrote of the recent death of Jorge Bidot, who died in the DSU at Cedar Junction following a fire in his cell. The letter complained of various matters, including alleged restrictions on the right of DSU inmates to leave their cells for exercise and other activities; the warden's requirement that DSU inmates wear "jumpsuits" rather than their own clothing; the denial of medical treatment and of visits from family and attorneys; and the closing of outer steel doors of DSU cells. On February 25, 1985, this court ordered that the open letter "be treated as a Petition pursuant to G. L. c. 211, § 3," and referred it to a single justice for investigation and recommendation.[3]

---

[2] The commissioner also asks us to permit him to restore the record of his suspension of visitation rights, for one month, of the MCLS paralegal. This issue arises out of the department's attempt to deny the paralegal's visitation rights, while under court order not to do so, because she allegedly violated department regulations in furnishing certain written material to a DSU inmate. See G. L. c. 268, § 31 (1984 ed.); 103 Code Mass. Regs. § 486.09 (2) (1978). The single justice directed the department to eliminate the suspension order from its records, while expressly acknowledging the commissioner's right to pursue before the single justice his complaint against the paralegal "for her alleged violation of visiting privilege regulations."

We need not concern ourselves for long with this aspect of the commissioner's appeal. The single justice's order was plainly interlocutory because it granted the commissioner the opportunity to pursue the disciplinary matter further. Moreover, the revocation of the paralegal's visitation rights seems indefensible because it directly contravened an order of the single justice. The commissioner makes no argument here that his revocation order was proper in the face of the court order, assuming its validity.

[3] Our reference to the letter as a petition under the general superintendency power of this court (G. L. c. 211, § 3 [1984 ed.]), should not be construed as a suggestion that this court has any right of superintendency or general authority to investigate the department or the commissioner. The reference to G. L. c. 211, § 3, was unnecessary to the court's action in sending the matter to a single justice as a petition to this court for relief.

In March, 1985, MCLS moved for orders permitting less restrictive visitations between MCLS attorneys and inmates than the department had allowed. After a hearing, the single justice ordered on April 8, 1985, that staff attorneys of MCLS and an MCLS paralegal "be permitted to meet with inmates confined in (DSU - Block 10) on the subject matters at issue in this proceeding: (1) without the imposition of a mesh, plastic or other barrier preventing the conduct of a 'contact visit'; and (2) without the necessity of conversing through any 'voicebox' or telephonic or other electronic device." The department did not appeal from that order.

In the view of MCLS, the problems persisted and new ones arose. MCLS filed another motion, in May, 1985, seeking further orders concerning visits between inmates and legal staff. On June 20, 1985, the single justice reaffirmed his April 8 order and entered a new order enjoining the department, "superintendents of state correctional institutions where DSU Block 10 inmates are incarcerated and other Department personnel," from revoking visitation rights and barring MCLS counsel or its paralegal "from entering DOC facilities without making application, upon showing of just and lawful cause, to this Court for an alteration of its orders concerning conditions of legal visits with prisoners."

On June 21, 1985, MCLS filed an amended complaint, on behalf of a class of inmates, seeking declaratory and injunctive relief with respect to conditions in segregation units and procedures by which inmates are placed and held in such units. No part of the amended complaint directly concerns visitation rights of inmates with counsel.

On July 23, 1985, the commissioner moved to terminate the orders of April 8 and June 21 allowing "special visitation rights for representatives of [MCLS] to the inmates in the [DSU]." In support of his motion, the commissioner contended that the orders were no longer necessary because their purpose had been served when an attorney-client relationship had been established and a complaint had been filed. He also objected to the "open-ended order" because it put him at risk of contempt. His motion added that "the court's order that visitation privi-

leges of MCLS representatives may not be suspended nor the visits barred except by order of the court *may* constitute an unnecessary interference with the defendant's statutory obligation to maintain safe custody of the D.S.U" (emphasis supplied). The single justice, reciting that the full court had authorized him to dispose of the issues in this case, denied the motion and made explicit that the orders continued in effect at least until issuance of a judgment. He concluded that the risk of contempt was "an unpersuasive reason to terminate the orders in light of the plaintiffs' need to consult in a reasonable, private manner with their attorneys and paralegal as the case proceeds to trial." As far as appears in the record he has brought before us, the commissioner did not argue to the single justice that the challenged orders were a judicial intrusion into the operations of the executive department in violation of separation of powers principles expressed in art. 30 of the Declaration of Rights.

The plaintiffs argue that this appeal is not properly here because there is no final judgment and an interlocutory appeal is not authorized as to pretrial matters collateral to the ultimate relief sought. Another reason for not deciding the issues presented on appeal, but not argued by the plaintiffs, is that the commissioner did not raise the separation of powers question below. See *Albert* v. *Municipal Court of the City of Boston,* 388 Mass. 491, 493-494 (1983). We do not decide whether immediate review of such an interlocutory order is generally appropriate. Because the practical result in this case will be no different, we will consider, as a courtesy to another branch of government, the issue whether the visitation orders are an unconstitutional intrusion into the commissioner's authority. See *Gurry* v. *Board of Pub. Accountancy,* 394 Mass. 118, 126 (1985); *McLeod's Case,* 389 Mass. 431, 434 (1983).

The commissioner has substantial obligations to "maintain security, safety and order at all state correctional facilities" (G. L. c. 124, § 1 [*b*] [1984 ed.]) and to regulate visits to such facilities (G. L. c. 127, § 36 [1984 ed.]). Inmates of correctional institutions are entitled to meet in reasonable circumstances with counsel and prospective counsel. G. L. c. 127, § 36A. *Pro-*

*cunier* v. *Martinez,* 416 U.S. 396, 419 (1974). In constitutional terms, the question can be whether the inmates are being denied their right of access to the courts. See *Souza v. Travisono,* 498 F.2d 1120, 1123 n.6 (1st Cir. 1974).

The single justice concluded that the department's original visitation procedures interfered with the inmates' rights, and he entered an order on April 8 to protect those rights. The department violated that order by denying the MCLS paralegal the right to visit DSU inmates. When a government official denies rights in contravention of a court order, the executive department intrudes upon the judicial department's authority in violation of art. 30. See *Perez* v. *Boston Hous. Auth.,* 379 Mass. 703, 729 (1980); *Blaney* v. *Commissioner of Correction,* 374 Mass. 337, 342 (1978). Once we have defined them, this court generally has refrained from ordering public officials to perform those duties, because we have assumed that they will comply with the law. See *Board of Health of N. Adams* v. *Mayor of N. Adams,* 368 Mass. 554, 568-569 (1975); *Alves* v. *Braintree,* 341 Mass. 6, 12 (1960); *Commonwealth* v. *Hudson,* 315 Mass. 335, 343 (1943). Where, however, the record shows that a public official or department of government has violated a court order, a judge is warranted in continuing, and perhaps even in strengthening, that order to assure protection of the rights violated. *Blaney* v. *Commissioner of Correction, supra.* See *Attorney Gen.* v. *Sheriff of Suffolk County,* 394 Mass. 624, 631 (1985). Implicit in the single justice's order denying the commissioner's motion to vacate the visitation orders is consideration of the department's earlier violation of the paralegal's visitation privileges. This contravention of the court order justifies the single justice's denial of the motion to vacate.

Although the commissioner apparently did not challenge the scope of the visitation orders, the single justice should consider whether, read literally, they unduly bar the commissioner from denying visitation when the commissioner and the department are confronted with an emergency, such as one involving prison security, during which not only would there be no time to

obtain the single justice's approval but also the department's efforts would be better directed elsewhere.

*Orders of the single justice affirmed.*