Rufo, Robert C., J.
The plaintiff, Michael Weitz (“Weitz”), seeks review under G.L.c. 30A, §14 of a decision of the Registrar of Motor Vehicles for the Commonwealth of Massachusetts (“Commonwealth”) to indefinitely suspend his license for failing to comply with the requirements of G.L.c. 90, §24 1/2. Before the court are the parties’ cross motions for judgment on the pleadings. For the reasons that follow, Weitz’s motion is DENIED, and the Commonwealth’s motion is ALLOWED.
BACKGROUND
On February 2, 1990, Weitz was convicted of operating a motor vehicle while under the influence of alcohol. On April 29, 1994, he was convicted of a second OUI charge. As a result of the second conviction, the Registrar of Motor Vehicles suspended Weitz’s license for two years. On May 1, 1995, Weitz applied for and was granted a hardship license, which allowed him to operate a vehicle between the hours of 8 a.m. and 8 p.m.
Weitz was eligible to apply for full driving privileges on May 23, 1996. However, he did not apply to the Registrar for reinstatement of his full license and instead continued to operate under his hardship license for almost eleven more years.
On April 12, 2006, Marshfield police stopped Weitz for a “red light” violation. At that time, police informed Weitz that he was driving on a restricted license. Weitz maintains that he did not know that he had been *648 driving on a restricted license. Instead, he claims that he had believed that his privileges would be automatically reinstated at the end of the two-year suspension period.
Weitz went to the Registry of Motor Vehicles’ Brockton office where he was informed that his license would not be reinstated unless he first installed a Certified Ignition Interlock Device (IID) on his vehicle. Melanie’s Law, which took effect January 1, 2006, requires individuals with two or more OUI convictions to install an IID on every vehicle they own, lease, or operate. See 2005 Mass. Acts 122. Weitz refused to install the IID. As a result, the Registrar suspended his license indefinitely.
DISCUSSION
One aggrieved by a decision of an agency in an adjudicatory proceeding may seek review of that decision pursuant to G.L.c. 30A, §14. The court may set aside or modify the agency’s decision if it finds that the decision was based on unlawful procedure or unsupported by substantial evidence. Id., §14(7). When reviewing an agency’s decision, the court “shall give due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary knowledge conferred upon it.” Id. The court must also “examine the entirety of the administrative record and take into account whatever in the record fairly detracts from its weight.” Cohen v. Board of Reg. in Pharmacy, 350 Mass. 246, 253 (1966). “The approach is one of judicial deference and restraint, but not abdication.” Arnone v. Dep’t of Soc. Servs., 43 Mass.App.Ct. 33, 34 (1997).
I. Weitz’s Ex Post Facto Claim
Weitz argues that because G.L.c. 90, §24 1/2 imposes on him a severe hardship, based on his past conduct, it is “predominantly punitive” and therefore an unconstitutional ex post facto law.[2] See Dupont v. Chief of Police of Pepperell, 57 Mass.App.Ct. 690, 694 (2003) (prohibition on ex post facto laws only applies to those laws that are punitive in nature). In determining whether a law affecting an individual based on prior conduct is punitive or remedial, the central inquiiy is “whether the legislative aim was to punish that individual for past activity, or whether the restriction of the individual comes about as a relevant incident to a regulation of a present situation, such as the proper qualifications for a profession.” DeVeau v. Braisted, 363 U.S. 144, 160 (1960).
Weitz points to language in the preamble of Melanie’s Law stating that the act is intended “to increase penalties for drunk drivers in the Commonwealth.” He argues, therefore, that the law has a punitive purpose. The same paragraph, however, expresses the act’s overarching goal as the “immediate preservation of public safety.” The IID requirement, a precautionary measure to ensure that those prone to OUI offenses do not harm themselves or others, furthers this aim. Such a provision also comports with the Legislature’s intent to entrust the Registrar with the task of preserving public safety through license regulation. See G.L.c. 90, §22 (“The registrar may suspend or revoke without a hearing any certificate of registration or license . . . whenever holder has committed a violation of the motor vehicle laws of a nature which would give the registrar reason to believe that continuing operation by such holder is and will be so seriously improper as to constitute an immediate threat to public safety”). The statute’s dominant purpose, therefore, is remedial.
Further, licensing statutes, such as the ones contained in G.L.c. 90, are generally remedial in nature. See Dupont, 57 Mass.App.Ct. at 694. In regulating licensure for activities that potentially affect the public’s safety, therefore, “the public interest [ ] is one of the utmost importance.” Id. at 693. The courts have thus found that statutes restricting one’s privilege to carry a firearm or to drive a motor vehicle are regulatory rather than punitive. See Luk v. Commonwealth, 421 Mass. 415, 423 (1995) (revocation of a driver’s license has “long affected public safety concerns”); Dupont, 57 Mass.App.Ct. at 694, quoting Ruggiero v. Police Comm’r of Boston, 18 Mass.App.Ct. 256, 258 (1984) (“A license to carry a firearm is a privilege voluntarily granted and revocable pursuant to a statute that aims ‘to limit access to deadly weapons by irresponsible persons’ ").
The fact that the IID requirement imposes a heavy burden on individuals such as Weitz does not render it punitive. See Fleming v. Nestor, 363 U.S. 603, 614 (1960) (“Where the source oflegislative concern can be thought to be the activity or status from which the individual is barred, the disqualification is not punishment even though it may bear harshly upon one affected”). Courts in this Commonwealth have held that a law imposing a burden, even an onerous one, on an individual as a result of his or her past conduct is not punitive if the statute’s overriding purpose is remedial. See, e.g., Commonwealth v. Fourteen Thousand Two Hundred Dollars, 421 Mass. 1, 10 (1995) (forfeiture of proceeds from an unlawful drug transaction is not punitive where it is designed to recover illegally obtained funds); Luk, 421 Mass. at 426 (temporary license suspension of drivers who refuse breath test not punitive); Commonwealth v. Olaf O., 57 Mass.App.Ct. 918, 919 (2003) (notification requirement for sex offenders not punishment but regulatory measure). In the same vein, the United States Supreme Court has held that even those laws preventing an individual from practicing his or her profession as a result of prior criminal conduct are not punitive if their underlying purpose is remedial. See Hawker v. NY, 170 U.S. 189, 196 (1898). While mindful that the IID requirement renders Weitz’s ability to drive his employer’s trucks difficult, this court is unable to find that section 24 1 /2 is the type of punitive law to which an ex post facto argument may attach.
*649 II. Due Process
The Commonwealth’s right to regulate licensing is subject to due process constraints. Luk, 421 Mass. at 428. In the context of license suspension or revocation, due process requires that the legislation bear a reasonable relation to a permissible legislative objective. Rushworth v. Registrar of Motor Vehicles, 413 Mass. 265, 270 (1992). Weitz argues that because he has operated a motor vehicle safely for eleven years, the IID requirement is entirely inconsistent with the legislative aim of Melanie’s Law. He therefore argues that, as applied to him, section 24 1/2 of G.L.c. 90 is unconstitutional.
From a public safety perspective, section 24 1/2 bears a reasonable relation to the legislature’s goal of ensuring that those “whose criminal records indicate that they have flouted the law in the past” do not threaten future injury to themselves or others. Dupont, 57 Mass.App.Ct. at 693. Using this rationale, it would be logical to require the statute to apply equally both to those with recent convictions and to those whose convictions are decades old. See id. In terms of fundamental fairness, however, this reasoning is not so easily justified.
This court notes that the connection between Weitz’s convictions eleven years ago and the statute’s purpose of protecting the public from drunk drivers is tenuous. See Apostolopoulos v. Massachusetts Registry of Motor Vehicles, Civil No. 06-3623 (Suffolk Super.Ct. October 6, 2006) (Sikora, J.) [12 Mass. L. Rptr. 616] (“Clearly, a stronger rational relation supports the imposition of the IID requirement on individuals convicted of operating under the influence a mere three years ago than upon those convicted well over a decade ago”). This court may not, however, impose its own views on the legislature’s determination that the IID requirement applies to all individuals possessing two or more OUI convictions. If changes are required, the legislature must initiate them. Luk, 421 Mass. at 429, quoting Mackey v. Montrym, 443 U.S. 1, 10 n.7 (1979) (“The Due Process Clause simply does not mandate that all governmental decision-making comply with standards that assure perfect, error-free determinations”).
ORDER
It is hereby ORDERED that Weitz’s motion for judgment on the pleadings be DENIED, and that the Commonwealth’s motion for judgment on the pleadings be ALLOWED.

Article 1, Section 9 of the United States Constitution states that “[n]o Bill of Attainder or ex post facto Law shall be passed.” Article 24 of the Massachusetts Declaration of Rights states that “[flaws made to punish for actions done before the existence of such laws, and which have not been declared crimes by preceding laws, are unjust, oppressive, and inconsistent with the fundamental principles of a free government.”